Good morning, ladies and gentlemen. Our first case for argument this morning is the SEC v. Honefli. Ms. Baker. Thank you and good morning, Your Honor, and may it please the Court. My name is April Barker, and I represent the appellants who are plaintiffs in state court action seeking damages against the defendants in the Securities Enforcement Action. With me at counsel table is Lead Counsel Patrick J. Schott. My clients have appealed several orders in these consolidated proceedings, including the order appointing a receiver with the authority to sell defendant ISC, Inc., the order staying my client's state court actions indefinitely against ISC, Inc., the order denying my client's motions to intervene in the receivership proceedings below, and the order confirming the sale of the business of ISC, Inc. Through the briefs in this matter, the issues have been narrowed somewhat and have distilled, I think, to one essential question, which I will touch on, as well as a couple of other minor points relating to the injunction issue and also relating to the receivership and sale. The essential question before the Court is whether the SEC, through the authority delegated in the Securities Act, has the authority to sell an entire ongoing business, the value of which has not been shown to correspond to ill-gotten gains from a fraudulent investment scheme, and then to redistribute the proceeds of that sale and its proceeds. Thank you, Your Honor. The receiver's motion to confirm the sale has been approved by the District Court. The proceeds, it's my understanding, are being held in escrow, plus a couple of payments that were, in fact, authorized or that were made by the receiver under his interpretation of the District Court's authority. But the receipt of proceedings has not been made, and those proceeds are being held in escrow pending. Who has custody of the assets of ISC that used to belong to ISC? The buyer? They are in the, ISC has the ongoing business assets, that is correct. Who has it? The buyer? I'm sorry, the purchaser has the assets of ISC, Inc. The proceeds of the sale are held by the receiver. And what's the status of your motion to reconsider the order confirming the sale in the District Court? That was just denied last week, Your Honor. And the sale, in further response to the question and in recognition that the court can take judicial notice of further developments in the underlying proceedings, the court has also approved the including the denial of our... Could you step back and try that again, please? If you would take your mouth a little farther from the microphone, it might help. Thank you, Your Honor. I appreciate that suggestion, and I will endeavor to be clearer through the microphone. The receiver, I'm sorry, the receiver's motion to distribute the proceeds of the sale per the Phase 2 distribution has been granted by the District Court. However, the distribution of proceeds other than limited payments to professionals... And what was in that motion? Is that a full schedule of who gets how much? It is, Your Honor. And have you appealed from that? We do intend to appeal from that. So I take it the answer is no, not so far. That is correct, Your Honor. Does that create a jurisdictional problem here? Since that's what this case is all about, that's what your argument now is about, is who gets how much? And that's not before us. That raises a question about appellate jurisdiction. In fact, the order confirming the sale included a denial of our motion to be treated as judgment creditors and to submit claims other than as through whatever might be distributed as discouragement. And that is the essence of what we are appealing. That's certainly an interlocutory step on the way to the final order, but the magic word is interlocutory. It doesn't resolve the case. So I repeat my question. Why is there appellate jurisdiction? With respect to the order authorizing the sale initially, the appointment of a receiver, Your Honor, there is jurisdiction under 28 U.S.C. 1292. And why? I don't see a discussion in your brief of our holding an HBSC bank against Townsend that an order authorizing a judicial sale of property there in a foreclosure is not appealable. Thank you. I would agree that normally a sale order in and of itself under the court's precedent is not in and of itself appealable. However, in this case, we have submitted respectfully that the sale order is appealable because under the collateral order doctrine, it finally Collateral order doctrine deals with orders that are collateral to the merits, have nothing to do with the merits. This has everything to do with the merits. And you may recall that HBSC bank discusses the collateral order doctrine. It says it doesn't justify such an appeal. I respectfully submit, Your Honor, that my understanding of the SEC v. Wenke case that we cited was that an order that determines the rights of parties separately from the merits of an SEC enforcement action is treated as an order that may be reviewed under the collateral order doctrine. And how is it an order that has nothing to do with the merits? That is absolutely essential to the collateral order doctrine, that it have nothing to do with the merits and that it be unreviewable when the merits finally become unreviewable. With respect to the merits of the SEC's enforcement action, the order does not appeal the consent judgment through which the defendants agreed that the merits of the action, that the merits, the complaint was admitted at least. The merits include the relief, right? It's not just did the SEC prove fraud. It's the whole stretch of cases from the theory of liability to the relief. And what you're arguing on to us are all issues related to relief. Well, that's part of the merits. It's not separate from the merits and unreviewable when the merits finally become reviewable. The Supreme Court has stressed most recently in Mohawk Industries, another case you don't discuss, that the collateral order doctrine should not be stretched and it's absolutely essential that it be restricted to things that have nothing to do with the merits. Your Honor, I would submit respectfully that had we not submitted the appeal, there certainly would be an argument that we had waived the ability to do so because our rights were finally decided. Oh, I certainly wouldn't put it past any lawyer to make an argument. But we're no longer in the world of are we protecting ourselves from an argument from the other side. We're in the Court of Appeals and the three of us have to decide whether there is jurisdiction. So if you have an argument that this is totally separate from the merits, or if you have a way of responding to our opinion in HSBC Bank, this is your opportunity to discuss those things. Your Honor, what I would argue is that the authority of the receiver to be appointed for the sale of ISC Inc. is properly before the court, as is the... Counsel, that's a conclusion. I had thought your argument simply relied on the text of or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property. Yes, Your Honor. That is the basis for the appeal of the appointment of the receiver. And then the...for the...with the authority. That's correct. I mean, that's an invitation to a multiplication of appeals in receivership cases, which we see. We've got how many here? Four separate appeals that are being considered this morning? That is correct, Your Honor. Yes. We certainly... Four so far. Okay. Let me...maybe we have jurisdiction, maybe we don't. If we do, let me ask you what concerns me most. I don't see anything special about your clients, among other victims of this Ponzi scheme. And if your tactic of, in essence, Me Too state court lawsuits that tag along after the SEC winds up offering anybody any tactical or strategic advantage as compared to other victims, then remedial efforts by the SEC in cases like this will become impossible morasses of multiplying litigation. So why should we apply the various legal doctrines that come into play here in such a way as to encourage such litigation? Your Honor, I would submit that Congress has directed that the SEC or the Commission is to step in and bring an enforcement action and seek equitable relief as the...it is characterizing the disgorgement order here, only when the standards of equitable relief are met, which connotes no adequate remedy of law. That sounds like a conclusion. Let's be practical. We've got how many victims overall in this Ponzi scheme? Approximately 120 or 150. Okay. Is there any reason they all shouldn't be treated pretty much the same in terms of providing and distributing the available assets? Your Honor, we respectfully submit that they are all being treated the same and that they all have the same private rights of action. You want them all to bring separate state court lawsuits in addition to the SEC action? I would respectfully submit that they have that right. That is an adequate remedy. Yes, they have that right. Why should we encourage that? When the SEC has stepped in on behalf of victims, who apparently...I don't think the victims have to pay the SEC to do that, and to distribute the available assets fairly. I think that's a judgment call that Congress has made and it has made that judgment in the commission to seek equitable relief on behalf of investors, which means equitable relief as historically recognized. One of the key requirements of equitable relief is that there must be no adequate remedy at law. Well, another option that you all have talked about some in your briefs is bankruptcy for ISC, right? That's correct. Have you or any of your clients ever tried to force ISC into bankruptcy or the other defendants so that, again, all claimants could be heard fairly? We have not to date, Your Honor. We're not. Initially, our goal was simply to pursue a judgment in our state court actions. Well, okay, that circles back to my earlier question, but go ahead. We were unfortunately interrupted in that effort through the injunction that was issued by the district court. However, I frankly would welcome bankruptcy as an alternative because in bankruptcy, we would be permitted to make our claims at law. We would have a right to vote on a plan of reorganization. Liquidation would have not been a foregone conclusion and there may be exceptions to dischargeability that would have applied. Dischargeability, well, that doesn't do you any good unless you've got assets available, right? Correct, Your Honor. If there was no liquidation, then there could have been ongoing collection efforts. Are you all objecting to the price that was obtained in the sale? We have not made an objection to that, Your Honor. I wouldn't think so, but yet you're objecting to the sale free and clear, that the assets go free and clear of your claims, right? We are, Your Honor. You don't think that changing that aspect of the sale would affect the price? It may affect the price, I am not certain. It might? Seriously? Well, I'm not... To coin a cliche, you guys are clearly trying to have your cake and eat it too, and trying to elbow to the front of the line, and I haven't heard any good reason why we should indulge that. Your Honor, my clients have state court rights that cannot simply... So does everybody else. Yes, they do, that is part of our point. Are you all familiar with 28 U.S.C. Section 1927, which has to do with attorneys being personally responsible if proceedings are multiplied unreasonably and vexatiously? Yes, Your Honor. Okay. We have simply tried to protect our clients' rights and to assert what we believe is an interpretation consistent and faithful to the statutory text with respect to the authority that has been wielded by the Commission in this case, Your Honor. We have repeatedly explained in the briefs, and I will not go over at length, but the Commission's justification for what it has done here has been a concept of discouragement that even as applied in the courts, the Commission has not endeavored to establish that the award that it obtained, in fact, was limited to the ill-gotten gains received by defendant I.S.C. Inc., the entity that we have sued in state court. Our interest that creditors have been detrimentally affected by the SEC's outsized claim, and by what it contends was an agreement with I.S.C. to essentially leapfrog a discouragement claim based on 20 years of alleged ill-gotten gains and allegedly representing all of the investors, many of whom we have no idea whether they would actually ever appear or pursue any claims on their own. It is only through aggrandizing its claim in that manner that the SEC has rendered I.S.C. insolvent, according to which has detrimentally affected all creditors other than those on whose behalf the SEC purports to act. We think at a minimum that there should be some congressional authority for taking such a drastic action with respect to a private corporation, and as we have argued, that does not appear in the text of the statutes. Do the consent judgments that the defendants entered into with the SEC, do they render the receiver, in effect, the controlling shareholder of I.S.C.? It is my understanding that the interests of I.S.C. Inc. were to be retained by the individual settling defendants pending further order of the court. I have not seen any further order through which those interests were surrendered. Okay. But the shareholders have not objected. That is correct, Your Honor. Okay. With respect to the injunction, I would like to briefly, in the time that I have, note that the injunction thwarted the policy of the United States Supreme Court as set forth in Riley v. Margolis by preventing the state court judgments from obtaining a judgment which then could have been regarded as an actual judgment in the receivership proceedings. And again, we respectfully submit that there was no basis for that order and that there was no threat to the district court's jurisdiction for the purpose of determining an alleged discouragement award nor any other civil penalty. I am coming into my rebuttal time, so I would respectfully close for the time being. Are you making an argument under the Anti-Injunction Act? We have not specifically asserted an argument under that act, Your Honor, but rather under the federal policies animating it. I must say, you lose me. There is a real statute out there. It's the Anti-Injunction Act. And if there is a problem at all with the district court's injunction, it's a problem under 2283. I looked through your briefs and didn't see any discussion of 2283. Why? Why are you choosing to argue based on hot air rather than on an actual federal statute? We anticipated that the commission would respond with authority indicating that there is a discouragement under the Anti-Injunction Act. And it may be so. And it may be the fact that once the sale has been completed, this is effectively in rem, also applies under the statute. But if the statute doesn't block this injunction, it's certainly the case we're not going to make up grounds to block the injunction. We're supposed to be applying the statute. If there's an exception to the statute, there's an exception. If there's no exception, there's no exception. My understanding, Your Honor, is that under the United States Supreme Court's view, as explained, for example, in Mitchum v. Foster, that federal policies against interference in state court proceedings have constitutional dimension and are recognized as essentially overlapping. This is not Younger against Harris Council. I'm sorry, Your Honor.  Okay. Thank you, Your Honor. Do you want to save a little time? Yes, thank you, Your Honor. Ms. Brady-Lyons. May it please the Court, my name is Morgan Brady-Lyons and I represent the Securities and Exchange Commission. These appeals stem from the efforts of a small subset of defrauded investors to interfere with the receiver's ability to marshal estate assets and to obtain a very disproportionate recovery for themselves at the expense of their fellow defrauded investors. But there's nothing about the appellant's race to state court that meaningfully differentiates them from other injured investors. And while their desire for a larger recovery in the distribution phase is what is driving this litigation, the distribution order is not currently before this Court. In fact, these appeals are limited to the questions of whether the District Court abused its discretion in appointing a receiver with the authority to sell ISC free and clear of claims, in staying the state court litigation, and in approving the sale order. It is clear that the District Court did not abuse its discretion in taking any of these actions. Turning first to the appointment of the receiver to sell ISC free and clear, there is ample support in the securities laws and the case law for the District Court's authority to appoint a receiver to marshal and distribute assets. With respect to the stay of the state court actions, under the Anti-Injunction Act, the appropriate test is whether the stay is necessary to avoid interference with the District Court's jurisdiction. Once it became clear that appellants were seeking to recover in those actions from receivership assets, the District Court did not abuse its discretion in staying the state court litigation until certain receivership issues could be resolved. Finally, the District Court did not abuse its discretion in approving a sale that appellants did not challenge on the merits and that resulted in a recently approved distribution plan that will provide an approximately 85% recovery on net principal to defrauded investors. The issue of the appropriate amount of disgorgement was settled in the consent judgment and is clearly not before the Court at this time. To the extent the appellants are arguing that the recent Supreme Court decision in CoCash requires the determination that the District Court lacks authority to appoint a receiver here, that is simply not the case. Counsel, is the SEC legally obliged to share disgorgement with victims? It is not, Your Honor. No. What happened here is the SEC did secure the forfeiture of the assets of ISC's shares in its disgorgement judgment, but what's on appeal here has to do with the appointment of the receiver who is authorized to marshal and distribute assets to defrauded investors in connection with disgorgement or not. I assume that there would be ramifications if the SEC were to take such steps and keep the disgorged funds for itself. I think there are circumstances, Your Honor, in other cases where it's just not possible to identify the victims. No problem here. In this case, I think clearly this is the right approach. Let me ask you, apparently nobody has opted for bankruptcy at this point with the exception of one of the individual defendants, but this whole receivership feels a lot like a kind of improvisational bankruptcy. We have a well-established body of laws and procedures for sorting out such things with undisputed power, for example, to stay state court litigation and the like. Of course. Why not just use bankruptcy in a case like this? I think, Your Honor, in this particular case, at the outset of the case, no one was petitioning to put ISC into bankruptcy. ISC itself was not seeking the protection of bankruptcy. So the appointment of the receiver in that context made sense, but receivership versus bankruptcy are not mutually exclusive. The receivership order explicitly gives the receiver the power to seek the protection of the bankruptcy court. Receivers are frequently appointed in bankruptcy or trustees. Let me repeat my colleague's question, which you're not addressing, which is why shouldn't this be a bankruptcy proceeding? In this particular case, Your Honor, I believe the receiver has not sought the protection of the bankruptcy courts. I know that he hasn't done it. The question is why? I'm sorry, Your Honor. I believe the issue here is that because of the nature of ISC's business, there was a lot of concern that putting ISC into bankruptcy could severely damage that business. Why? I thought you just sold all the assets. We did sell the assets, Your Honor. Businesses are sold in bankruptcy all the time. That's true. That is true. I think the process of putting the company into bankruptcy, the sale would not be immediate. Why? This sounds like an old superstition. People sometimes say bankruptcy is corporate death penalty. People who say that don't know anything about bankruptcy. Are you relying on data which suggests that when a firm enters bankruptcy, it suffers a capital loss of some kind? We are not, Your Honor. I'm not aware of any such data. I think the nature of ISC's relationships with its employees and its carriers made it more subject to folks simply leaving if a bankruptcy was contemplated or commenced. But now, all the assets went to another entity? Yes. ISC is just a shell with money and escrow, right? Correct. The receiver is still free to put ISC into bankruptcy at any time. Creditors are free and investors to petition the district court to put ISC into bankruptcy. As the Seventh Circuit has recognized, bankruptcy, while it has many advantages, also involves a number of fixed costs. Receivership can sometimes be a more efficient, less expensive mechanism to distribute assets. Is there any data supporting that view? I don't have any data. The SEC has got lots of receiverships and I assume it has access to lots of bankruptcies. So, you're making an empirical claim about relative costs of receivership in bankruptcy. I would love to see empirical evidence rather than just lawyers' talk. I don't have that at this time, Your Honor. Well, if you don't have it, what's the basis of your statement that one is cheaper than the other? That statement can be made responsibly only if you know facts suggesting it's true. So, what facts are you relying on? I'm looking at the fact that in a bankruptcy case, for instance, an unofficial creditor's committee has to be appointed. And that committee is unable to charge fees that come from the estate. Teller's counsel charges fees to the estate. In other words, your statement was not responsible. It's not based on knowledge. Not particular knowledge as to research, Your Honor. That's true. You can try everybody knows and go from there. I'm sorry, Your Honor? Everybody knows, you know. You don't have to prove anything. Yeah. It doesn't add up, but you know, you can say it. On another matter, counsel, I don't quite understand the rationale for denying intervention to parties who were the targets of the district court's injunction. I believe, Your Honor, in this case, appellants have not shown that there was any prejudice to them for not intervening as parties. They were able to take appeals. They've objected to numerous issues in front of the district court. Why should we not just call them parties at this point? They have interests. They're fighting, whether wisely or not, for an extra large piece of the pie. They're the targets of the court's injunction. I just don't understand how they're not parties. Why they aren't entitled to be parties. I think that the district court looked at 7th Circuit case law that has said intervention as of right isn't available when the proposed intervener can pursue its claim during the receivership. But it's true, Your Honor, we have not objected on the grounds that they're not parties to any appeals that they're taking here. I think that the designation of party did not show that there's any prejudice in not having that designation. Suppose, for example, the SEC decided we want to keep the disgorged funds. They would have a right to assert that claim, right? Of course. To say, at least to argue that that shouldn't be done? Yes, they certainly would have a right. As parties in the district court, would that be an appropriate form? I think they can make the objection whether they're parties or not in a receivership proceeding. Okay, I'm very confused then. In what sense are they not already parties? I think it's not... They did not meet the criteria for intervention as of right, but I don't know that they're being denied any rights that they would otherwise have as parties. Judge Hamilton just mentioned one, and it bugs me, too. If we affirm the denial of their motion to intervene, how will they be able to appeal when there's a real final order providing for distribution? I think there is a case line, Your Honor, suggesting the Seventh Circuit. There is one? There are cases in the Seventh Circuit that suggest, whether they're a party or not, investors in a receivership action, if they've been protecting their rights throughout, can certainly take an appeal. And we have not objected to their appeals on any such grounds. You haven't objected. Somebody else might, right? I just... Your arguments in the district court seem to have created this kind of... We've got this sort of quasi-bankruptcy, and then we've got this sort of quasi-intervener status without granting it. And I guess I'm looking for a little clarity, and I don't... At least doctrinal boxes I'm familiar with. I think this is part of the process in a receivership action, and so there are elements that resemble sort of a liquidation of assets, but there are sort of particular protections for defrauded investors in a receivership, too. With or without the formal titles. In terms of bankruptcy, would there be any... Or as compared to the receivership, would the receivership have any advantage in terms of efforts to reach out and identify victims? As opposed to just expecting people to come forward and file claims? I think the receiver has sort of... Subject to the district court's broad equitable discretion, but the receiver does have the ability to take a very flexible approach, and in this kind of case is particularly tasked with, among other things, protecting the interests of defrauded investors in a way that is not traditionally the case in a bankruptcy case. With respect to the bankruptcy versus receivership question, I did want to add that it's certainly not clear to us that appellant's clients would actually do better in a bankruptcy situation. That is something they suggest, but it's hard to see exactly how that happens in this case. Do you think we have jurisdiction? Appellate jurisdiction here? Now that the motion to reconsider has been denied? I believe this court does have jurisdiction clearly over the motion to appoint the receiver. With respect to the sale order, we think it's a very close question. We understand the Seventh Circuit has held that typically a sale order and a receivership case is not on its own appealable. The particular circumstances of this case, because the issues raised in the appealable order appointing the receiver and the sale order are so intertwined, we think there's something similar dependent appellate jurisdiction. You know what the Supreme Court has said about dependent appellate jurisdiction, I trust. Yes, Your Honor. It's something like witchcraft. It mostly doesn't exist, although it can't be definitively shown to be non-existent. And you're relying on that doctrine? We think it's a very close question, Your Honor. I should think a federal agency could do better than rely on a non-existent doctrine. Why doesn't 1292A2 authorize our jurisdiction clearly? I think it clearly does with respect to the appointment of the receiver. That's not all 1292A2 covers. It also covers sales of assets. And I was struck, as I gather my colleague was, by the fact that the briefs rely on the collateral order doctrine and neither of them mentions the application of 1292A2 to sales of assets by the receivership. I'm puzzled. I don't understand. I think the better argument is that the language of 1292A2, the refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, would encompass an appeal of an order refusing to order a sale as opposed to a sale order. I think the language is not as clear as it could be. But I believe that's the stronger read of the language and that would not cover the appeal of the sale order in this case. Are you finished? I think I am. The court has nothing further. Thank you, counsel. Anything further, Ms. Barker? Your Honor, I would note and I would be happy to submit a supplemental memorandum to this effect, but I would simply note that the receivership in this case has not been cheap. There have been substantial professional fees paid and I believe there is a reserve requested for substantial additional fees through the conclusion of the receivership proceedings. I would also note that the receiver's suggestion, the suggestion that the receiver could better identify victims may be belied by the fact that in this case checks were mailed out, but we do not know by whom they were cashed. I think that is one of the benefits of bankruptcy proceedings which require parties to at least identify themselves and submit some proof of claim to the bankruptcy court, establishing that they have, in fact, a legitimate claim. I would also note, just briefly, that the fact that the Commission has indicated that it is not required to share the proceeds of discouragement demonstrate that the SEC is not acting, as it indicated under U.S.C. 78 U.D. sub 5. Thank you, Your Honors. We respectfully request that the orders appealed from be reversed. Thank you very much. The case is taken under advisement.